## WHITE v. HOLLAND FURNACE CO., INC.
### No. 3847.

District Court, S. D. Ohio, E. D.

July 14, 1941.

See, also, D. C., 31 F.Supp. 32.

Pealer & Tuttle, of Columbus, Ohio, for plaintiff.

Arnold, Wright, Purpus & Harlor, of Columbus, Ohio (Alexander, McCaslin & Cholette, of Grand Rapids, Mich., of counsel), for defendant.

DRUFFEL, District Judge.

The above-entitled action being for breach of contract and conversion was submitted to the court upon the pleadings and the evidence, a jury being waived.

From the evidence it appears that plaintiff was an employee of defendant and pursuant to an invitation of defendant as of February 19, 1931, authorized defendant to purchase 200 shares of stock of the company for him at $31.15 per share, total $6,230, to be paid for in accordance with Plan No. 2 [1] and posted 100 shares as collateral.

The 200 shares were purchased for plaintiff March 1, 1931, and his account charged with $6,230, against which the company held as collateral the 300 shares. Between that time and January 26, 1933, the account had been reduced by the payment of dividends and bonus to $4,049.12.

March 23, 1933, plaintiff wrote the following letter:

"Mr. E. H. Sulkers,
Holland, Michigan.

Dear Mr. Sulkers:

For some time I have been very much concerned about what could be done regarding my stock account. Apparently any thought of sufficient earnings for some time to come, on which the purchase of this stock was based, is out of the question; I do not feel that the Company will want to carry this account indefinitely and I have, I believe, the right solution to close it without delay.

I was informed recently that our bonds could be purchased for 40¢ on the dollar and on this basis by selling the three hundred shares of stock that you are holding, at the market, the proceeds would be sufficient to purchase our bonds at current prices and close out the account.

I trust that this arrangement will meet with your approval and that you will proceed accordingly.

With kindest personal regards, I am,
Yours very truly,
(Signed)    J. F. White
          Columbus, Ohio."

Def's.Ex.No.3; Pl. Ex. G.

March 28, 1933, E. H. Sulkers, Secretary of defendant answered:

"Mr. J. F. White,
Columbus, Ohio.

Dear Mr. White:

We have had considerable discussion in this office relative to the handling of our employees stock purchase account but up to the present time nothing definite has been determined as to what will be done with this

---

[1] Plan No. 2—"For every share of our stock now owned by you which you assign to us, we will buy two shares of our stock for you at the market, plus the brokerage charge to us. You are to pay us ⅓ of amount invested in stock purchased for you under this plan on or before June 1, 1932; ⅓ on or before June 1, 1933; balance on or before June 1, 1934. Interest, at six per cent per annum, is to be deducted quarterly out of dividends received on your stock, and balance of dividends is to be credited to your stock purchase account. Title to the stock deposited under this plan, as well as to the stock purchased hereunder, shall remain in the Holland Furnace Company and/or its nominee until it is paid for in full or until it has been sold.

"In the event the Holland Furnace Company should declare any dividend payable in stock, we reserve the option to sell the stock at the market, and apply the proceeds the same as though the dividends had been paid in cash.

"In default of any payment by you when due, we reserve the right to sell, at the market, all of the stock held by us in your behalf, and to return the proceeds to you after deducting the amount you owe us."

account. Until some decision has been reached, it will be impossible for us to consider the proposition which you made. I will advise you as soon as anything has been decided.

With kindest personal regards, I am

Very truly yours,

(Signed)   E. H. Sulkers."

Pl. Ex. H.

April 6, 1934, the President of defendant company wrote plaintiff a letter, a pertinent paragraph follows:

" * * * In order to assure you of a cash distribution from your net bonus, your Board of Directors has made the following generous offer: Any Branch Manager who is indebted to the Company for obligations incurred prior to April 1, 1934 (such as notes, stock purchases, automobiles, etc.) is to receive in cash at least 50% of his net bonus and only such proportion of the balance as may be required is to be applied against his indebtedness to the Company. * * *" Pl.Ex.I.

May 1, 1934, the Board of Directors of defendant company addressed a lengthy communication to branch managers and employees, pertinent quotations follow:

"There came to our attention last week a circular letter signed by persons unknown, under designation "Your Committee". Attached to that letter was a questionnaire. We have had a considerable number of returns from this questionnaire and are very much gratified to note·that our employees as a whole are loyal and evidence their intention of doing their best to carry out the Company's plans for the future. In view of the fact that the persons who sent out the letter in question lacked the moral courage to sign their names, we are not in position to address them directly, but we·feel that you are entitled to definite information on the questions raised by the anonymous letter. * * *

" * * * In regard to our financial situation, we thankfully state that we are now in a far healthier condition than we have been for years. At the beginning of our fiscal year, April 1, 1934, we have no loans from any bank, a condition which has not existed for years, and which reflects great credit on our Company and its present management. Therefore we can assure you there is no cause for the slightest worry concerning future financing if expanding business should require the same.

"In view of what·we have said above, and of many other facts not touched upon in this letter, we are fully convinced that the management is protecting the interests of all, whether the sales organization, other employees, or stockholders. We have long needed progressive leadership, and we now have it. This leadership is, and must be, in harmony with firm policies which promise stability to the Company and not connected with loose methods which in the end spell disaster. Thus life savings and years of hard work of the stockholders will be protected and loyal employees who rightfully are looking for remuneration according to value given will be satisfied. They will not be swept off their feet by crafty and subtle statements which are foreign to the truth and which the authors of such statements cowardly refrain from signing.

"Perhaps we should add that the Board of Directors would not consider the reinstatement of the former management." Pl.Ex.J. (Court's Italics.)

June 1, 1934, the White account was in default under the terms of Plan No. 2. November 26, 1934, Mrs. White representing plaintiff went to Holland and there met Mr. A. W. Tahaney, Secretary of defendant company. The purpose of her visit was to try to rent a warehouse she owned in Columbus to defendant and to use the rent to reduce the balance owing defendant on the stock account. In this she was unsuccessful. She also was inquiring as to the intention of the company regarding the stock account which. was then in default. The following from the deposition of Mr. Tahaney explains the position of defendant at the time:

"Q. 79 What did you tell her with regard to the balance? A. I told Mrs. White that we were holding the stock as collateral and the stock was in negotiable form.

"Q. 80 With reference to the stock, you refer to 300 shares of stock? A. That is right. And we could sell the stock at any time, because the account was past due and the contract stated that in case of default we had the right to sell the collateral and apply the proceeds to the account. However, due to the fact that the market value of the stock was very low, I believe around $7 a share, and that had been down to $3.50 a share, we were not at that time considering selling, but in the event the market would go up we then, of course,

would use our own judgment as to what would be done with the collateral, unless they paid the account in the meantime."

The next communication between the parties was the following:

"December 4, 1935.
The Holland Furnace Co.
Holland, Mich.
Mr. A. W. Tahaney, Treasurer,
Dear Sir:

May I congratulate you and the Holland Furnace Co., on the restoration of our Holland stock value, and the general welfare of your company.

I deeply appreciate it; and believe we should have a statement of our account, with interest in full to date, that we may be guided at the proper time of settlement and aware of the earliest moment of solvency.

Thanking you for your courtesy, I am,
Very sincerely yours,
(Signed)   (Mrs. J. F.) Leona White."
Pl. Ex. C.

And the answer:

"December 10, 1935
Mrs. J. F. White
1410 Lincoln Road
Columbus, Ohio.
Dear Mrs. White:

As requested in your recent letter, we are submitting statement of your account. You will note that your stock was sold in July 1935 and the proceeds credited to your account and that by doing so, the collateral has been considered as paying your account in full. The collateral was negotiable and was held in our possession and your account was past due, which necessitated your account being liquidated.

The attached statement gives you a complete resume of the transactions applicable to your account.

Yours very truly,
(Signed)   A. W. Tahaney
Secretary"   Pl. Ex. D-1.

September 22, 1936, plaintiff went to Holland to discuss his claim against the defendant company for selling out his account without notice.   October 13, 1936, plaintiff wrote the following:

"Mr. H. Boersma
c/o Holland Furnace Co.
Holland, Michigan.
Dear Mr. Boersma:

When I was in your office several days ago you promised to either write me or have Mr. Tahaney write me relative to adjustment of my equity in the stock account transaction.

It was my impression that I would be advised of the attitude of your Company toward my claim within a week after my visit with you on September 22nd. I do not want to seem impatient but must have your reason, if any, for further delay.

With kindest personal regards, I am
Yours very truly,
(Signed)   J. F. White"   Pl. Ex. E.

The answer:

"October 22, 1936
Mr. J. F. White
c/o White-Orr Company
46 E. Swan Street,
Columbus, Ohio
Dear Mr. White:

I am in receipt of your letter of October 13 and, as advised you at the time of your visit that I would discuss the subject in question with our  Mr. Tahaney upon his return to this office, I naturally assumed that he was going to write you with regard to this transaction.

I am at this time referring your letter to him in order that he may be reminded of your desire to receive word regarding the stock account transaction.

With best personal regards, I remain
Warmfriendly yours,
Holland Furnace Company
(Signed)   H. Boersma
(Purchasing Agent)"   Pl. Ex. K.

There was no further correspondence or conversation, and on November 1, 1937, plaintiff filed his petition in the Franklin County Common Pleas Court, setting out his purchase of the stock and the sale of same without notice contrary to an agreement to notify plaintiff of any proposed sale so that he would have an opportunity to protect his account.

After removal to the United States District Court, plaintiff, over vigorous objection by defendant, was allowed to file an amended petition with a second cause of action based on the same set of facts alleged in the original petition, and claiming under Sections 9561, 9562 of the compiled Laws of the State of Michigan, as follows:

"*Sale of personal property collateral; notice.* Section 1. When stock, bonds, or other personal property is pledged as collateral security for the payment of money or the performance of any obligation,

and there has been a default in such payment or performance, such stock, bonds or other personal property may be sold to satisfy said debt or obligation at public sale, or at private sale where the contract of pledge authorizes a private sale; but before a sale, ten (10) days' notice in writing thereof shall first (1st) be served on the pledgor or his legal representative, either personally or by mail addressed to said pledgor or his legal representative at his last place of residence. * * *

"*Same; public sale, time, manner of conducting, notice; purchase by pledgee.* Sec. 2. In the case of a public sale, as provided in section one (1) of this act, such sale shall be at public vendue, between the hour of nine (9) o'clock in the forenoon and the setting of the sun, at a public place in the township, village or city where such stock, bonds or other personal property is held as collateral security; and shall be made by the person or party or corporation so holding said stock, or the agent or attorney of said person, party or corporation; and notice of such sale shall be given by posting a written or printed notice thereof in three (3) public and conspicuous places in the township, village or city where such sale is held, ten (10) days before the date of said sale; and the pledgee, his assigns, or his or their legal representatives, may fairly and in good faith purchase said property or any part thereof, at such sale."

Defendant by amended answer contends that by the plan of purchase it was authorized to sell the stock after default, but that in any event, the plaintiff with knowledge of the sale thereafter approved and ratified the sale and is now estopped to claim that defendant acted without authority or legal right to sell the stock; also that the second cause of the amended petition pleading Michigan Statutes 9561, 9562 was barred by the statute of limitation, and by cross-complaint claims damage in the sum of $707.22, interest at 6% from July 26, 1935.

The testimony at the trial consisted principally of the introduction of the correspondence herein set out and of the verbal conversations of Mr. and Mrs. White on their visits to Holland, Michigan, and of their impressions of what defendant intended to do to protect their stock account and the testimony of Mr. Tahaney in regard thereto. All of which is consistent with the letters passing between the parties.

From a consideration of the evidence this court finds as a matter of fact that the stock was sold without notice to plaintiff; that plaintiff had a right ·to assume from the letters and bulletins of defendant that his account would be protected at least to the extent of receiving notice before a sale; that the sale was made in violation of Michigan Statutes 9561, 9562; that defendant has failed to sustain the burden of proof in its defense of ratification, and concludes as a matter of law that plaintiff is entitled to judgment in accordance with the prayer of his amended petition; that defendant's prayer for judgment on its cross-complaint is not allowed.

The law governing plaintiff's right to recover and of the disallowance of defendant's cross-claim has been established by the Court of Appeals for this Circuit in Holland Furnace Company v. Louis F. Allen, 6 Cir., 118 F.2d 969, decided April 8, 1941.

An entry may be prepared with exceptions.